IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2024

**GEMEYAL[1] STROWDER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for McNairy County**
**No. 4913      J. Weber McCraw, Judge**

_____

**No. W2024-00716-CCA-R3-PC**

_____

The Petitioner, Gemeyal Strowder, was charged with aggravated robbery, aggravated assault, possession of a firearm by a convicted felon, and theft of property valued at one thousand dollars ($1000) or less.  Pursuant to a plea agreement, the Petitioner entered a guilty plea to aggravated robbery, and the remaining charges were dismissed with the sentence and manner of service to be determined by the trial court.  Following a hearing, the trial court imposed a sentence of eighteen years' imprisonment.  The Petitioner subsequently filed a petition for post-conviction relief, which the post-conviction court denied.  In this appeal, the Petitioner argues that he received ineffective assistance of counsel.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined

J. Colin Rosser, Somerville, Tennessee, for the appellant, Gemeyal Strowder.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Mark Davidson, District Attorney General; and Lisa Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 27, 2023, the Petitioner signed two documents evincing his intent to enter a guilty plea: a "Waiver of Rights to Jury Determination of Fact Related to Sentencing" and a "Plea of Guilty and Motion to Waive Trial by Jury and Waive Appeal" (hereinafter

_____

[1] We briefly note that the Petitioner spelled and signed his first name as "Gemayel" in his pro se petition and motion for appointment of counsel.

referred to as "The Plea of Guilty"). In the Plea of Guilty document, the Petitioner memorialized his understanding of the guilty plea process and the rights he was waiving by initialing seven different paragraphs, which acknowledged, in relevant part, that he understood the nature of the charges against him and any defenses that may be raised on his behalf, that he had discussed all defenses with his attorney, that he was satisfied that a proper investigation of his case had been made and that he was satisfied with his attorney's representation in this case. The Plea of Guilty also included the Petitioner's acknowledgment and request that the trial court accept his knowing and voluntary guilty plea to the plea agreement's terms. The Petitioner agreed to plead guilty as a Range II offender to aggravated robbery, a Class B felony, with a range of punishment of twelve to twenty years to be served at one hundred percent, in exchange for the dismissal of the other three charges.

During the guilty plea colloquy conducted on the same day the two documents were signed and filed, the State provided the following factual basis in support of the guilty plea:

[I]f this matter went to trial, the State would intend to show that on May [18, 2022], McNairy County dispatch gave county unit the call for an armed robbery in progress at the Ramer Quick Stop located at 4453 Highway 57 West in Ramer. Dispatch advised a black male wearing a mask had come into the store with a firearm[,] asking the store clerk for all the money. Dispatch then advised the male subject got into a car with a female driver and left the scene traveling north on Friendship Road. Deputy Davine was traveling on New Bethel Road toward Friendship Road when she passed a vehicle similar to that description, turned around, initiated a traffic stop of that vehicle in front of an address of 2975 New Bethel Road. She noticed the vehicle was driven by a female with the opposite being a black male. She ordered the black male subject out of the car and told him to show her his hands. He complied, and [she] explained to him that he was detained as she was investigating an incident that just happened at the Ramer Quick Shop.

During a pat down of the male to make sure he did not have any weapons for her safety, approximately nine hundred thirty-five dollars cash was stuffed in his right front pants pocket. She secured the money. She then asked the female driver to exit the vehicle, which she also complied, female [was] identified as Christy Barnes, and the male [was] identified as the [Petitioner] Gemeyal Strowder. During this time, Deputy Hawkins went to the Ramer Quick Stop to speak with the store clerk. He spoke with Ms. Dorothy Switzer. She advised that the black male wearing a mask came into the store, held a gun across the counter at her and stated[,] "[G]ive me all of it." Ms. Switzer did give all the cash in the cash register to the male.

Sergeant Gilbert then arrived on the scene[,] and he Mirandized [the Petitioner] to which he stated he understood his rights. While speaking with Sergeant Gilbert, [the Petitioner] did admit to going to the Quick Stop with a firearm and asking for all the money. He stated that Ms. Barnes did not know what was going on – did not know he was going to rob the store. Sergeant Gilbert also Mirandized Ms. Barnes to which she stated she understood her rights. Ms. Barnes stated that she did not know what [the Petitioner] had done, that he had just asked her to drop him off to use the restroom. At the time a search of the vehicle was conducted. During the search[,] a black mask was found in the console along with a .9 mm pistol in the passenger floorboard. . . . After he was arrested and then incarcerated, [the Petitioner] did make several phone calls the State believes were incriminating as well, that we would plan to use if we went forth to trial, specifically those being on [May 18, 2022] when whoever he was talking to says "Man, which way did y'all go" and he said, "I went on Friendship Road[,]" one on [May 19, 2022] he says "I didn't do this sh**" – "I did this sh** and got away. It's just the MF that was driving ain't no driver," [May 19, 2022,] also talks about the time and thinks he was set up. [May 19, 2022,] also he talked about the money was going to change the situation, he was going to buy whoever he was talking to a ring. Also, on [May 19, 2022,] he's talking about why he got an agg[ravated] assault charge and says[,] "It's my word against theirs. They got me on camera but they don't got me on camera." [May 19, 2022,] also talking to someone, says[,] "I didn't shoot anybody. I just had a gun." Also, on [May 19, 2022] says[,] "I'm still thinking about how I got caught. That sh** just got weird but if I had just listened to you, If I had went through Ramer, I'd be straight[.]" And all those calls were provided to Counsel in discovery as well.

Upon questioning by the trial court, the Petitioner agreed that he understood the charges and penalties and that there would be a sentencing hearing at a later date. He acknowledged that he had a right to plead not guilty, have his case decided by a jury, and appeal a possible finding of guilt. He also acknowledged that he could either testify on his behalf or not testify at all. In addition, the Petitioner recognized that he had a right to call witnesses to testify on his behalf at trial and that he had the right to confront and cross-examine any witnesses testifying against him. When the trial court asked if he understood that he was giving up these rights by entering his guilty plea, the Petitioner replied, "Yes."

The Petitioner affirmed that no one had forced or threatened him to enter his guilty plea. When asked if anyone had promised him anything in exchange for his guilty plea, the Petitioner responded, "Yeah, twenty years. That's it." When the trial court corrected him that it was twelve to twenty years, the Petitioner replied, "No. I understand, sir. It's—

I'm kind to it. I understand. I ain't got no dog in this race so it's understood." He acknowledged that by being found guilty, his conviction could be used against him if he continued to violate the law. He understood what he was doing and admitted that he was guilty of aggravated robbery.

The Petitioner's trial counsel stated that the last time they were in court, there was a "scene," and the Petitioner requested a new attorney. Trial counsel assured the court that he had discussed the issues with the Petitioner and that he believed the Petitioner's frustration stemmed from the plea offer, not from trial counsel's performance. Later during the hearing, the trial court stated, "At some point, you weren't satisfied with [trial counsel]," to which the Petitioner replied, "It wasn't him." The trial court asked him if trial counsel was properly representing him now, and the Petitioner responded, "Yes, sir." Trial counsel stated that he filed a motion for discovery in the case, met with the Petitioner multiple times, and discussed potential defenses that may have been available to him before he agreed to plead guilty.

The Petitioner acknowledged that he was entering a guilty plea to aggravated robbery because he was guilty. The trial court found that the Petitioner was competent to enter the plea and entered the guilty plea freely, voluntarily, and intelligently. The trial court found the Petitioner guilty of aggravated robbery, dismissed the other three counts, and set the matter for a sentencing hearing. On June 5, 2023, the Petitioner was sentenced to eighteen years as a multiple offender to be served at one hundred percent.

On January 18, 2024, the Petitioner filed a timely pro se petition for post-conviction relief, alleging in pertinent part that his conviction was based on an unlawfully induced guilty plea or a guilty plea involuntarily entered without understanding the nature or consequences of the plea and that he received ineffective assistance of counsel. The Petitioner alleged that he "never understood what [he] was doing [and] just listen[ed] to [his] lawyer telling [him] it was a good deal when it truly wasn't[.]" He further asserted that his lawyer "never represented [him] with the best of his ability at all during the court[] proceedings I even ask[ed] for another lawyer, but was told to represent myself so they were bias with me[.]" The Petitioner was subsequently appointed post-conviction counsel, and on March 19, 2024, a "notice" was filed that no amended petition for post-conviction relief would be filed.

At the April 29, 2024 evidentiary hearing, the Petitioner testified that he was aware he was facing twenty years' imprisonment at the plea hearing. He said trial counsel told him that accepting a guilty plea was his "best bet." The Petitioner and trial counsel also discussed another defendant charged with the same crime based on similar facts. That defendant proceeded to trial and was sentenced to eighteen years' imprisonment. In discussing entering a "blind plea" and placing the Petitioner's case in the "judge's hands,"

as opposed to a jury, the Petitioner recalled trial counsel saying, "[I]f I was the Judge and you [pled guilty,] . . . I'm looking at you being in the middle. . . . like fifteen years." Based on this remark, the Petitioner believed he would receive a fifteen-year sentence by entering a guilty plea. According to the Petitioner, he "detrimentally relied" on trial counsel's statement and entered his guilty plea.

The Petitioner claimed that his case "was a big case in this town" because his face was featured in the city newspaper. He asked trial counsel to file a motion for a change of venue and other unspecified motions; however, trial counsel told him it would not matter. He did not go to trial because he did not have confidence in trial counsel's abilities. The Petitioner asked for another attorney, and trial counsel was appointed elbow counsel instead.

On cross-examination, the Petitioner stated that he was unaware whether the other defendant who had the same charges and proceeded to trial had prior convictions. The Petitioner also agreed that he had three prior convictions. The Petitioner admitted that trial counsel argued mitigating factors at sentencing in an effort to reduce his sentence to twelve years and that trial counsel reviewed all sentencing possibilities with him.

Trial counsel testified that the State dismissed three other charges in exchange for the Petitioner entering the plea agreement. Trial counsel explained that an incident happened in court, causing him to be relieved as counsel; however, he was appointed elbow counsel. Acting as elbow counsel, trial counsel provided the Petitioner with a copy of everything in his file, including all videos on a USB drive. Trial counsel asked the Petitioner if he wanted to go to trial at their initial meeting, and the Petitioner responded that he wanted trial counsel to negotiate a plea deal for him. Trial counsel and the Petitioner discussed the ramifications of what would happen if he went to trial or accepted the plea agreement offered by the State. They discussed a different defendant's case with similar facts to the Petitioner's, who proceeded to trial and received an eighteen-year sentence. Trial counsel did not believe he promised the Petitioner anything or "told him he would get anything out of it."

On cross-examination, trial counsel stated that he and the Petitioner discussed potential sentences and reviewed the plea forms, which the Petitioner initialed and signed. The Plea of Guilty document stated that the Petitioner was facing a range of punishment of twelve years to twenty years at one hundred percent as a Range II offender. Trial counsel also testified that during the guilty plea hearing, the court advised the Petitioner that his plea agreement carried the same potential sentence. The Petitioner agreed he understood the charge and the penalty. He reviewed the paperwork informing the Petitioner of the potential sentence with the Petitioner before the plea hearing, and the court reviewed the paperwork at the plea hearing. Trial counsel also agreed that a change of venue would not

have affected anything in the case and that if the trial had been held in a different county, the same judge that presided over the guilty plea hearing would have presided over the trial. Trial counsel met with the Petitioner about eight times over four or five months of his representation and spent a lot of time with the Petitioner reviewing everything before entry of the guilty plea. He agreed that there was an occasion when the Petitioner refused to meet with him when he was struggling to "make any progress as far as the plea deal goes." Finally, trial counsel denied telling the Petitioner that his sentence would be served at thirty-five percent.

The post-conviction court entered an order denying post-conviction relief on May 15, 2024. The court determined that the Petitioner alleged in his petition that he did not enter his guilty plea knowingly and voluntarily because trial counsel did not properly investigate or advise him. The order provided in relevant part as follows:

[The Petitioner's] claim was not substantially established at this hearing.

At the plea hearing, [the Petitioner] testified under oath. He testified that he went over the plea form, the waiver of a trial and waiver of appeal forms with his attorney and signed them. He testified he understood what he was doing. The plea[] form[s] indicated that he would be facing twelve to twenty years and that he would proceed as a Range II offender, and he would be sentenced by the judge.

He was informed that his sentence would not be eligible for probation and was to be served at one hundred percent.

[The Petitioner] was asked if he was satisfied with the representation of [trial counsel][,] and he stated he was. He testified he had met with his attorney, and he was properly represented. [The Petitioner] testified that no one had forced him to enter this plea of guilty, and that he did not have any question about the proceeding.

Before the plea proceeding, [trial counsel] went over the same information with [the] [P]etitioner several times.

[The Petitioner] stated that no one forced him to plead guilty.

The court found that [the Petitioner] entered a plea as a multiple offender.

The [c]ourt finds that [the Petitioner] actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The [Petitioner] was fully aware of the direct consequences of the plea, including the possibility of the sentence actually received. He was informed at the plea hearing of the potential sentence.

The [c]ourt accredits the testimony of [trial counsel].

The [c]ourt finds [trial counsel] provided adequate assistance; he met with [the] [P]etitioner and discussed the case, including possible sentences. The defense counsel successfully fought a day-for-day sentence possibility for the maximum sentence and was able to have several of the charges dismissed.

[The] Petitioner failed to show any deficient performance by [trial counsel] or that he was prejudiced by the entry of his plea. The entry of a plea of guilty to avoid the risk of a greater sentence does not make a plea involuntary. Hicks v. State, 983 S.W.2d 240 [(Tenn. 1998)].

A plea hearing is not a mere formality. It serves to ensure that the defendant understands his rights and the terms of his plea. State v. Neal, 810 S.W.2d 131 [(Tenn. 1991)].

The [c]ourt finds that [the] [P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann §40-30-210. The Petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. . . .

The Petitioner filed a timely notice of appeal, and this case is properly before this court for review.

## ANALYSIS

The issue presented for review in the Petitioner's appellate brief is whether "the trial court erred in finding that [he] received effective assistance of counsel." Other than citing boilerplate post-conviction law and restating the facts from the evidentiary hearing, the Petitioner does not assert how trial counsel was ineffective or how the trial court erred in denying relief. At best, the Petitioner implies that trial counsel provided ineffective assistance by insinuating that he would receive a sentence of fifteen years' imprisonment and by failing to file a motion for a change of venue. In response, the State contends that

the Petitioner is not entitled to relief because he failed to establish that trial counsel was ineffective in failing to file a motion for change of venue and for telling the Petitioner he would receive a sentence of fifteen years. We agree with the State.

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Mobley, 397 S.W.3d at 80 (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. Id. (citing Grindstaff, 297 S.W.3d at 216; Finch v. State, 226 S.W.3d 307, 315 (Tenn. 2007); Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006)).

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; see also Tenn. Code Ann. § 40-30-103 (granting relief when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States). To prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). Within the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

The prejudice showing is, in most cases, a necessary part of a Strickland claim. Weaver v. Massachusetts, 582 U.S. 286, 300 (2017). The reason is that a defendant has a right to effective representation, not a right to an attorney who performs his duties mistake-free. Id. (citations and internal quotation marks omitted). As a rule, therefore, a violation of the Sixth Amendment right to effective representation is not "complete" until the defendant is prejudiced. Id. Under Strickland, "[b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

Upon our review, we conclude that nothing in the record preponderates against the determination of the post-conviction court. As previously stated, the Petitioner's brief does not identify the grounds he specifically relies on in seeking post-conviction relief. Nor does he state how the post-conviction court erred in denying relief. By generally presenting his post-conviction claim, the Petitioner risks waiver of his appeal. Waiver notwithstanding, we will consider the issue presented as preserved by the order of the post-conviction court. At the hearing, the Petitioner failed to establish that trial counsel provided ineffective assistance by failing to investigate his case. The Petitioner did not offer any proof regarding this claim. The plea forms show that the Petitioner was satisfied with the investigation performed by trial counsel before entry of the guilty plea. Trial counsel testified that he met with the Petitioner about eight times over four or five months of his representation and spent a lot of time with the Petitioner reviewing everything before entry of the guilty plea. Acting as elbow counsel, trial counsel provided the Petitioner with a copy of everything in his file, including all videos on a USB drive. The post-conviction court accredited trial counsel's testimony, and the Petitioner is not entitled to relief.

Next, the Petitioner implies that the post-conviction court erred in concluding that his guilty pleas were knowingly, voluntarily, and intelligently entered. When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by rule as stated in* State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must

affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include the following:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Upon our review of the guilty plea hearing transcript and the evidence adduced at the post-conviction hearing, we conclude that the post-conviction court properly determined that the Petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered. As reflected above, the record shows that the Petitioner was advised of the range of punishment for the offense before and during the guilty plea hearing. He signed the plea form indicating that he understood the length of punishment would be determined by the court, and he acknowledged during the plea hearing that he understood the potential range of punishment. At the post-conviction hearing, the Petitioner testified that he knew he was facing a maximum of twenty years' imprisonment at one hundred percent at the guilty plea hearing. In deciding to enter a guilty plea, the Petitioner compared his case to a defendant similarly situated who went to trial and received a sentence of eighteen years. Based on discussions with trial counsel, he was convinced that if he pleaded guilty and put his case in the judge's hands, he would receive a fifteen-year sentence in the middle of the range. The Petitioner said, "me and [trial counsel] talked several times and I ain't going to just say he put – I ain't going to say he implemented it in my mind but when he said – he said . . . if I was the Judge and you pleading . . . I'm looking at you being in the middle . . . like fifteen years." The Petitioner did not testify that he would have proceeded to trial but for his reliance on trial counsel's alleged statement. Trial counsel testified that the Petitioner instructed him to pursue plea negotiations with the State. Trial counsel also reviewed the terms and conditions of the plea agreement with the Petitioner several times and advised the Petitioner of the maximum range of punishment. Trial counsel also reviewed the plea

paperwork with the Petitioner before he entered his guilty plea. Trial counsel said he did not mislead the Petitioner and did not believe he promised the Petitioner anything. The court accredited the testimony of trial counsel over the testimony of the Petitioner.

The record further shows that the trial court complied with the guidelines of Rule 11(b) of Tennessee Rules of Criminal Procedure, the Mackey factors, and thoroughly questioned the Petitioner about the terms of the plea agreement and the consequences of his guilty plea before accepting his guilty plea. In response, the Petitioner acknowledged that he understood and stated that his counsel had explained the plea agreement to him, that he was satisfied with counsel's representation, and that he was entering the plea freely, knowingly and voluntarily. There was no proof presented showing that the Petitioner was unable to appreciate the consequences of entering the guilty plea in this case or that he was coerced or misled into entering the guilty plea. There was also no proof that the Petitioner would have proceeded to trial but for his reliance on trial counsel's alleged misleading statements. As such, the Petitioner has failed to prove by clear and convincing evidence that his guilty plea was constitutionally infirm. Accordingly, he is not entitled to relief.

## CONCLUSION

Discerning no error, we conclude that the post-conviction court properly determined that the Petitioner received effective assistance of counsel and that the Petitioner's guilty plea was knowingly, voluntarily, and intelligently entered. The judgment of the post-conviction court is affirmed.

s/ **_Camille R. McMullen_**

CAMILLE R. MCMULLEN, PRESIDING JUDGE

- 11 -